The next case for this morning is Appeal No. 15-1402. Since Hardware v. United States. Mr. Meneghaz, is it? Yes, thank you. Okay. Before we begin your argument, could you, just for housekeeping purposes, give me a roadmap of how this is going to work? Your Honor, that's exactly what I was going to spend my first paragraph explaining in my introduction. I'm here on behalf of Foshun Shundei, and we've written a joint brief for them and Sense Hardware, the two mandatory respondents on the appeal. With me is my colleague Alexander Salzman from DeKeefer, and William Perry of Dorsey Whitney, who represents Sense Hardware in the underlying dispute and in the litigation before the CIT. What I was going to try to do was address two major margin driver surrogate value issues that are common to both companies, the financial statements and the brokerage and handling, in my eight minutes. I was just going to try to roughly evenly divide that time, if I could manage to do that. Then I was going to reserve a few minutes for rebuttal. Two minutes, right? Right, a few minutes. Actually, I have five. Eight for presentation, five for rebuttal. Five is your rebuttal. Then Mr. Perry has three minutes because there are some very specific arguments that were made that Sense Hardware has no standing because they closed the business. That was very specific to his client. If those arguments are presented here, he will get up and rebut them. If they're not presented here, we'll use the time for surrogate value rebuttal. Does that make sense? I hope it does. I think it makes sense, so we'll just run with it. Okay, whenever you're ready. Okay, may it please the Court. So if I could bypass my first paragraph. We will focus on two major margin driver issues, the selection of the surrogate financial statements for the financial ratios and the brokerage and handling. So diving right in with the financial statements, the department's principal practice, for as long as I've been practicing since 1992 and earlier, has always been to require that financial statements used for the surrogate financial ratios, overhead, SG&A, and profit come from a publicly available source. This is one of the most uninterrupted practices of the department that I've ever seen in my 20 years of doing this. I want to maybe just walk you very quickly through the history of this litigation because I think it undermines the department's credibility entirely. They started in their initial decision by saying that, oh, no problem. The petitioner on the other side, the domestic industry, found the statement on the Ministry of Corporate Affairs website. For a small fee, we can all go on a computer and get into the Indian Ministry of Corporate Affairs and download publicly available statements. Well, that simply wasn't true. They never alleged that they got it there, and we put a mountain of evidence on the record. We made the effort to do that. We did the print screens from the Ministry of Corporate Affairs, all proving that the statement was not completely available from the Ministry of Corporate Affairs. The key missing information was the income statement portion of the annual report, and that's where they pull all their financial ratios from. All the numbers on that page are used to calculate the financial ratios. So the fact that that's not on the Ministry of Corporate Affairs website was a critical flaw in the statement. And so then next on remand, because the judge noticed all this and said, what's going on? They said, oh, no problem. The petitioner asked the company and obtained it. Well, that is not true either. The petitioner never alleged that they asked the company for the statement and they obtained it. In fact, we asked the company for the statement, and we sent them an e-mail, and they said, get lost. We're not giving you any of our financial statements. We're talking about the Fifth Administrative Review here? Yes, we're talking about the Fifth Administrative Review. The third and the fourth. Well, Fosha and Shinde was not involved in the third. You explain in our rebuttal brief very clearly that all these allegations by the Commerce Department of Fosha and Shinde's involvement in all those cases is highly misleading. We were not even involved in the third review. And in the fourth review, they signed a total AFA. So they didn't make a decision about the financial statements. It wasn't a focus of the briefing at all. And the company was fighting for its life. I wasn't their counsel at the time. But they said you had some documents, some production reports you could have given us earlier, and they were given in the last supplemental. And they said, that's too late. We're not going to start with a brand-new set of documents underlying your costs. And I was hired to go in and use those production documents in AR-5 and rescue the company. And Commerce came out and verified those documents and gave them a margin. And that's what we're arguing. And so what we're saying is the first time this was ever a legitimate square issue that was focused on and served value submissions and briefing is in our review in AR-5. And there's a very long-established principle of administrative law of the Commerce Department that each segment, each individual proceeding, whether it's an investigation or a review or a subsequent review, stands on its own and is based on the record of that segment. And so you can't say whatever we did two reviews ago is fine. And kind of jumping quite a bit ahead in my outline, if you look at the steel nails from China decision, Commerce, you know, we were involved in all those cases, and we have some of them percolating up behind us in the court. Commerce said they wanted to use Ukraine. Commerce said, well, this DINO permits financial statement, good for you. It might have been publicly available when you submitted it, but it's not now. We did our job. We went and looked for it, and we can't find it. So it's not publicly available. You lose. We're discarding the statement. And we're moving to another surrogate country, in fact, because that statement's not publicly available. So whether it was publicly available in the past or in a previous review is totally not the point. If the Commerce Department is going to be a neutral arbiter of these disputes, it has to do its due diligence when a party has rebutted the presumption of public availability. And we did that, and we showed the MCA web screenshots that it's not available. Commerce didn't bother to check the screenshots like they did in steel nails. They just said, no problem. Because they put it on the record and because you had a chance to comment on it, it's fine. Well, then that would obliterate any definition of public availability because there's no such thing as a nonpublic document. All you have to do is put the document on the record, and the parties get a chance to comment on it. I can put the U.S. military's nuclear codes on the record and their public documents because I put them on the record. That's no standard at all. It's clearly not the standard they applied in steel nails and in steel grates because those would have been decided differently, and they were endorsed by the CIT. I mean, steel grates was in remand at the same time. And the CIT, we quote on page 19 of our brief, this is the court saying, commerce in preparing the remand results was presented with the question of determining whether to use the financial statements of a company that produced identical merchandise to steel grating, but whose financials were not publicly available, or the financial statements of eight companies that produced comparable merchandise, but their statements were available. Commerce reasonably chose the latter. Commerce in steel grates did its due diligence and said, look, if someone has rebutted the presumption of public availability, the submitter of the information has to go back and establish how they obtained this information and that it's genuine. And that really strikes at the heart of the whole issue. The whole issue is, is the statement reliable for the calculation of the financial ratios? When it's been submitted to a government authority like the Ministry of Corporate Affairs, then it's deemed genuine and reliable. This company's name said Infinity Modules Private Limited. It's a private limited company. Under the Indian Companies Act of 1956, they don't have to publicly disclose their income statement in the Ministry of Corporate Affairs public records. They can do it if they want to, but they don't have to, and they didn't in this case. The other two companies we've argued for, Maxima Limited, that means it's public, and Omax Limited, they're both public companies. They don't say PVT, private limited. So even in the name, the presumption is rebutted, but certainly with the MCA screenshots, the presumption is rebutted. Commerce should have gone back and said, you've got to offer more. You've got to prove this is legitimate, and they never did. When we get verified, you know, I have 20 years of experience. Bill has 30 years of experience. You know what the Commerce Department does in every verification? They look at the financial statement of the Chinese company. They check the chops and the stamps to make sure it's the actual statement that was filed with the government. If you can't provide an annual report with those chops on it, they say it's not reliable, and they'll go to your tax filing, because the tax filing was filed with the government. They need an official source that is 100% reliable. They didn't have one in this case, and it's inexplicable, and for the judge just to say it was on the record, you got to comment what's the big deal, misses the point that no one can say that this statement is reliable. It could have been provided to the petitioner in response to a request to buy the company. Hey, we want to buy your company. Show us that you're a good, healthy company. They could have made up their profit statement, their income statement. We have no idea. The petitioners never explained why. They had four chances on remand to do it, never offered the information. Can I please point you to a footnote in my brief that I want to correct in case there's a misunderstanding? At page 26 and 27, we mention that there are multiple other years of the financial statements on the record in two footnotes, footnotes 7 and 8. And I was rereading this thinking, gee, I hope the court doesn't misunderstand this. These are other years, other later years of OMAX and Maxima, of the companies we wanted to present. What Commerce used was the 06-07 infinity. There is no such later statement on the record from them, and our contemporaneous period is 08-09. So that's another argument we made that contemporaneity is one of the criteria, and it's critical, especially in this case where this was pre-recession. But if this company intended for its statements to be public, why couldn't they get the contemporaneous statements like we got? They couldn't even get one year less contemporaneous. The only one they were able to recycle was a three-year-old statement. So all of these facts together, we think, present overwhelming evidence that the statement's not public. You're into your rebuttal, actually. Did you want to say something really briefly about brokerage and handling? Yeah, there's so much to say. Really brief. Yeah. Well, you had 90 pages in the brief to say it. I didn't even get off the first page of my outline. This is a sea change case. For 30 years, Commerce used the detailed, verified reports of Indian companies in dumping cases with thousands of lines of programming about their brokerage and handling costs. Here, for the first time, they used this doing business report. The judge never even addressed our argument. He misstated our argument and said, oh, you've got a rate sheet from Hapak Lloyd. That wasn't our argument. That was a benchmark that corroborated the actual data of Indian companies. I just want to make one more point about Sense Hardware. For the first time ever in 30 years, the judge threw them out of the surrogate value discussion in the court. I've never seen two companies not get the same surrogate value for a commonly used thing, and we argued it extensively so everyone had a chance to consider the issue. It was kind of bizarre that he tossed them out of court on the surrogate value for brokerage, and we hope you address him on that. So I'm going to reserve the rest of my time. Let's hear from the other side here. Is it Mr. Eikenson? Mr. Snyder, I was observing Mr. Perry. Are you reserving all your time for rebuttal?  Okay, Mr. Snyder? Yes, Your Honor. Okay. You'll be speaking for 11 and then Mr. Eikenson will for four minutes? Yes, Your Honor. Okay. I'll try to obviously address everything Mr. Menegas addressed and also what I believe are some issues that are only relevant to Sense Hardware, which you haven't heard yet from them. Turning first to the financial statements, the issue of public availability, I'll address that first since that was the last issue discussed. The practice of the department is the regulation says to normally use publicly available information. So the word is normally. It's not a requirement. That's the first point. There was a mistake here in the beginning of this proceeding before the trial court. There was a misstatement that these financial statements from Infinity Modules were from an Indian website, and that was corrected. In fact, as was discussed, these financial statements were acquired by the petitioner of the domestic industry during the third administrative review, put on the record in that review. They've been on the record in the third and the fourth review. In those reviews, neither party objected or disputed their public availability in those reviews. How frequently has Commerce in the past used non-public financial statements? There's at least one case that was addressed by the trial court and the parties below, Catfish Farmers, where there was a proprietary financial statement used as part of the surrogate values. But these two cases would be the only ones that you're aware of? I don't know of any other cases. I hear Commerce's position is these are publicly available. That's the square interpretation, and that's our position. The trial court did make it a point to discuss this issue and say basically that the purpose of the regulation was fulfilled, and whether or not they were publicly available, the court didn't have any concerns with the reliability because these financial statements had been in the world for a long time, and parties had an opportunity to comment and analyze them for a long period of time. They were publicly available, according to you. Why? Because they were obtained as counsel for the domestic industry certified, for petitioners certified that it obtained them directly from the company itself during the third period of review, and they were publicly available then. That publicly availability hasn't changed. Well, public availability doesn't, I suppose, necessarily mean exactly the same thing as I could get it. Exactly. I could have a friend in the front office of a company who would ship me something in a brown paper bag, and that wouldn't make it publicly available just because I got it. So what is your position as to why it really is publicly available as opposed to simply having been procured? The most simple is it's a financial statement that is obviously in this record and in other records, and it's not proprietary in these records. Whether or not a party wants to attack the veracity or reliability of these financial statements, once they're public, they can be analyzed and they can undermine them. That didn't happen here. There's nothing suggesting that these financial statements are not reliable. In fact, for Infinity Modules as a general matter, it's telling them, and this was discussed in the case below, that in the fourth administrative review, Forsh and Shundy put an Infinity Modules financial statement on the record, not for the 06 or 07 period, which is being used here, but for a later period of time. In response to that, in that review, the petitioner put the financial statement that's at issue here. So there were two Infinity Module financial statements at issue there, and no party ever objected to the public availability before. It was only in this case, and to just quickly address before I move into why this was the best available information, the only reason we're talking about other periods of review here, which is typically we limit ourselves to this period of review, was because we needed to understand where these financial statements came from, what was the origin of them. So that was why we did that. To the extent that there's arguments that it was improper to go outside of this period of review, we only did that to trace back the origin of where these financial statements came from, for the public availability prong. It doesn't relate to why these are the best available information because of, for example, contemporaneous nature or whether they're the most comparable product that is at issue. For those prongs, the department explained that Infinity, and the evidence supports this, Infinity is a manufacturer of furniture. OMAX and Maxima, for OMAX going first, they are primarily not a manufacturer of furniture. It's clear that they're manufacturing automobile parts primarily. Twenty-eight of their 29 customers are automobile companies. There's really not a large dispute about that. For Maxima, the department found that over a period of time, financial statements that were on the record for this period of review and then for two subsequent years, that they had become a trader and reseller and not a manufacturer primarily, and that that was a drastic shift in their business. Because they were no longer a manufacturer or primarily no longer a manufacturer, it wasn't reasonable to rely on them over Infinity Modules, which was a manufacturer. There's appendix sites that I can provide for, but this is all discussed by the trial court as well in the various decisions that are at issue. This was the best available information. It was publicly available. The trial court did comment that even if it wasn't publicly available in an objective standard, the court found that the purpose of the regulation to give parties the opportunity to comment and analyze the financial statements was fulfilled in any event, and the regulation doesn't require it to be publicly available. It is the best available information when one compares its comparability to this merchandise. And once the information was available, the income statements, was the accuracy of them challenged by your adversary here? It was challenged more on the grounds of contemporaneous timeframe, that it wasn't the exact period of review. Were the numbers challenged? In no specific way, no. They talk about the Great Recession that occurred in 2008, and that these statements are from 2006-2007. That was discussed below at length by the parties in briefs. This issue wasn't raised in the opening brief here by appellants, so we didn't talk about it in our brief. Is there a harmless error here issued, that even if the particular record, once they get out, somehow didn't satisfy the publicly available test, once they're finally looked at, there's no harm? Nobody can show that these numbers caused any problem? That would be a secondary way to affirm. Our position is that it's publicly available, as a sort of regular meaning of that term, and that there's no reason to conclude otherwise. But even so, if there's any problem... There's no definition in the regulations of what constitutes publicly available? There is no definition, Your Honor. With respect to the steel nails case that was discussed, in that case, the party that... Something had been printed in a newspaper could be publicly available. That's true. Of course, parties can attack the reliability of whatever is published in a newspaper, but the public availability of it is obvious. In your definition of public availability, what would not be publicly available, since by definition we're talking about something that made its way into the record? Well, I think in the catfish farmer's case, there was a proprietary... It was proprietary financial statements that were used. But it was in the record. It was in the record. Everybody had an opportunity to comment. Doesn't that satisfy your definition of publicly available? I'm trying to figure out what your definition is, really. Here, this financial statement was never proprietary. So in every record that it's ever been in, it's always been a public part of that record. Something that was under seal. If it came into the proceedings, but the parties, everybody said, well, it's under seal, and the only people that can see it are the participants in this room. It wouldn't be publicly available. In catfish farmers, the point there was that even though it wasn't publicly available, it was within keeping of the regulation, because the word normally, this is normally publicly available. It's not a requirement. And so if commerce determines that in a specific situation, it's necessary to look beyond publicly available information, it has to obviously articulate why. But that happened in catfish farmers. But it just demonstrates that you don't always have to use... The difficulty of getting access to a registry says that he tried to get this information, and he couldn't get it. So if he can't get it at the time in which he wants to get it, it's impairing his ability to deal with the numbers, even if he didn't want to challenge the numbers. Respectfully, Your Honor, they did send an email, but they didn't ask for the correct period of time. So there is no clear evidence that they couldn't get the period for the financial statement that's being used for that year. They never asked for the correct year. But yes, they did ask for financial statements from Infinity, and were unable to get them. That is correct. But that doesn't change the fact that the financial statements were obtained from Infinity Modules a few years before it was certified by the Council for the Domestic Industry. Who got them before? Council for the Domestic Industry, I'm not sure if it's the same council that is now here for Intervenor. But I believe it is. But those financial statements have been on the record all along. And as I said, in the fourth administrative review, there were other financial statements from Infinity Modules that were placed on the record by folks in Shundi, and it just demonstrates that they were using Infinity Modules financial statements for different periods of time themselves that they found were useful. So the public availability of Infinity Modules financial statements was never raised before this period of review, because here, the other prongs, the factors such mainly comparability to the merchandise, it was so obvious that Infinity Modules was the best available information, that the best way to try to attack that was through the public availability prong. And the court referred to it as a technicality. It's our regulations. That was the court's language, that it was a technicality, that this was really something that was brought up in this period of review to try to knock out these financial statements when they had been around for a long time. Mr. Snyder, you're over your time, unless there's any questions. Okay, I think we'll hear from your co-counsel. Thank you, Aaron. Please, the court. I'm Frederick Eikenson, attorney for Petitioner Home Products International. I intended to spend most of my time addressing the jurisdictional issue, which we consider a threshold question, but I would like to just start with, if I may, less than a minute, to follow up on this discussion of the Infinity Modules financial statements. The Commerce Department used Infinity Modules financial statements in the first review, second review, third review. And in the third review, the most current one available to us then, was for the fiscal year ending 2007. That was put on the record, and since hardware was a party to that case, since hardware did not question the report at all. The report was submitted by me. It had an auditor's report. The statement was audited. It was used. No one questioned the veracity of that report. And for now, for the appellant to argue that because in the third review, since hardware was an AFA rate, an adverse facts available rate, and therefore its margin was not calculated in a regular way, somehow that makes the statement, the financial statement, irrelevant. It's not true, because the financial statements were challenged. They were used, rather, in the third review, since hardware commented on it, did not question it, and there was another party in the third review for whom the financial statements were used in calculating the margin. In the fourth review, involving Foshan Shunde, Foshan Shunde took the initiative of putting an Infinity Modules financial statement that was not for the period ending 2007, but the period ending 2005. It was the earlier financial statement, which the Commerce Department had already used and blessed in the first review, and also in the second review. We responded to Foshan Shunde's initiative and said, we agree that the Infinity Modules is an appropriate proxy or surrogate producer. However, there's a more recent statement that you should be using. You should use the statement that was just put on the record in the third review. Foshan Shunde's counsel says that Foshan Shunde had no opportunity to question that, didn't challenge it. That's just not correct. It is true that at the end of the day, in the fourth review, Foshan Shunde received a very high margin based on adverse facts available. But they argue that adverse facts available should not apply. Well, if that doesn't apply, that means they're going to get a calculated margin. They did not dispute what the financial ratios should be based on, and they had every opportunity to question the financial statements that we put in that record. So with that, I just wanted to... But this case is the fifth review, and your opposing counsel is saying that was then, this is now. This is an independent new review with its own record. Well, all that I'm suggesting to Your Honor is they never questioned the validity of these numbers before. Is this part of an estoppel argument or a waiver argument? Are you arguing estoppel or waiver? And why is it that they're barred now from raising a question that they happen not to have raised in a previous review? We're not arguing estoppel or waiver. Then I'm not sure why what they did in a previous review is particularly relevant. Well, I mean, it's equivalent to an admission against interest. They've never challenged the validity of our numbers, these numbers. And now they're raising it. You know, the first time they put in infinity modules in the fourth review, they put it in for the period ending 2005, which would have generated a very, very low financial ratio number. They were content with using it for that purpose. When we said, well, infinity modules is a good candidate, but you're using the wrong numbers. So that kind of changed the way they viewed infinity modules. I mean, is there an interest that Commerce has in trying to use the same measuring stick from administrative review to administrative review? I don't think so. I think that what Commerce Department determined and what the lower court determined was that there really is no credibility issue surrounding these numbers. That, I think, was the point. Well, I think Judge Chen was asking a different question from the one I think you answered, if I understand your answer. I thought the CIT actually said that there was a value to having the same data source for the different administrative reviews. And that was one of the considerations that Judge Gordon weighed, I thought, in saying that using the infinity data was okay. Am I mistaken in my understanding of what Judge Gordon said? I think he expressed the notion that Commerce had some familiarity with infinity modules. And that was a factor cutting in favor of using infinity, correct? Yeah, I think so. I think he said that. You've run out of time. May I be really brief and discuss the jurisdiction? I think it's a critical issue. Since hardware, one of the appellants was unquestionably an interested party at the beginning of this litigation. It was a manufacturer in China of ironing boards. It was an exporter from China of ironing boards. And it participated in the administrative review. It clearly had standing to sue, and it did sue and belonged in court. However, it doesn't have standing now because more than three years ago it stopped producing ironing boards. It stopped exporting ironing boards. So as a result of that, it really does not have a stake in this litigation. There's nothing that this court can do that could make Sins Hardware happy or that could make them displeased. They are not affected by this, and this is almost definitionally an absence of a case or controversy. And we think that there's no dispute that Sins Hardware is not. No possibility that they will be financially harmed in any way whatsoever regardless of the outcome? We see no way that that's true. We do not see how they're harmed by the outcome. Okay. I think we have your argument. We need to move on. Thank you, Your Honor. Thanks very much. All right. We'll add a couple extra minutes for the rebuttal. So it's 5-5-5. May I please report? I'll try to be brief. And please definitely cut me off so my colleague gets a chance to speak. Will do. I was really quite shocked that the opposing counsel could read all of our briefs over four remands and not think we were challenging the reliability of the infinity statement and its ability to be verified and relying on the numbers that were, in fact, used to calculate the financial ratios that's more than half of our margin. And I'll point at least to page 23 of our opening brief. It claims we never raised the issue. It was shocking. I'll quote. In the middle paragraph, in the middle of that paragraph at the end, there is no official way for the department and the parties to corroborate the data when it is not independently publicly available. Even now the parties do not know the conditions under which the statement was received and whether the statement is consistent with the official statement privately filed by the MCA as required by law. I just want to move on unless you have any questions about the point we were trying to make in all hundreds of pages of briefing. Now, maybe I'll pick up on the point that Mr. Eikenson just finished and what Judge Bryson referred to, this reliance principle. Unfortunately, we don't have that luxury in our area of practice because there's a special law in non-marketed cases that says the department shall rely on the best available information on the record of the proceeding for the factors of production. Every proceeding has a different factual record, and they have to decide what the best available information is on that proceeding. It's like if you made a decision based on, you know, there's a dictum in a decision from two years ago and now you're bound by that dictum in a new case five years later. Nothing that happened in the past can govern what is happening here. And since Foshin Shunde was fighting for its life under adverse facts, it didn't raise the issue. First of all, none of those records and briefs are before this court or on the record before the lower court. This is all characterizations. I think you can be sympathetic that Foshin Shunde was writing a brief on the major margin impact issue of surviving its data, and so the issue of public availability was not joined. It was not the focus, and the Congress specifically said, we don't have to rule on the financial statements because we're giving AFA to Foshin Shunde. Now, the first time in this review, the issue is joined, and we're asking the court to rule. And it wasn't the only issue. They said that Infinity is clearly the best statement. Well, that's just wrong because OMAX and Maxima consume cold-rolled steel. That means they have huge plants that cut huge coils of cold-rolled steel by length and width and form them into tubes and stamp plates for all different products. So if you look at the legs of an ironing table, it's very similar to a handlebar for a motorcycle or a muffler pipe. It's pipe that is formed from raw steel. Infinity Modules just assembles pre-finished parts into retail office chairs. So they're in a completely market sector using completely different production equipment and purchasing completely different raw materials. So we don't accept at all that they're comparable, and we think the judge completely missed the contemporaneity issue at all. He didn't even address it. So now the government counsel said there's no test. I'm not sure that's right. I seem to recall Judge Gordon's opinion saying, well, yes, contemporaneity is an issue, but it is on balance. It isn't a fatal problem. Right. Public availability is the fatal issue. All the other issues can be balanced. But, I mean, you just said that he didn't even address it. Well, no. Well, public availability, you just said it's on the record, so therefore it's public. But I would agree. Contemporaneity is what you said he didn't address. Right. We don't believe he gave any weight to our argument that the statement was two years old and prior to the Great Depression or the Great Recession. Now, they say that there's no test, but, of course, there is. If you read all these cases in the briefs, there's a rebuttable presumption. Once it's rebutted, commerce goes back to the party and says, prove you found it off the company website. Prove you found it from the MCA website. Prove it's on a public stock exchange. Prove that it's publicly available. So there is a test and there are ways to prove that, and they didn't adhere to those ways. Okay. Let's hear from your co-counsel. Thank you, Your Honor. Your Honors, I just want to address very briefly the jurisdiction issue and make four quick points here. First, we believe that the issue of jurisdiction, since hardware, it really, HBI, there's a collateral estoppel here. There's an issue preclusion. The CAFC now has ruled three times against this argument on jurisdiction. In the appeal of the fourth review, in the same identical issues, the CAFC ruled against HBI in this issue, and then you ruled against it. Your Honor, what potential harm is your client exposed to either way in this proceeding? Well, first, there's two things, several things. First, SINs has a standing and persisting interest in this case because of the impact on its customers, on the importers. This is a retroactive nature of the statute. The retroactive nature of the statute is that it affects the liability of the U.S. importers and the customers of SINs hardware, which affects SINs hardware. Also, since it affects the customers and therefore affects you, how? Because whether you can ship or not. In the future, if these guys are wiped out, these are your customers in the long-term nature. In the future, any manufacturer of any of these products in an investigation area can show up and say, we want to participate, even though we haven't sold anybody that came in the United States. Keep in mind one other point here. Am I right? I'm trying to get a handle on this. Not right on one point. Well, a foreign manufacturer has standing, but truthfully, the right is given to the exporter. Since hardware continues to have a registration, it is an existing company, they are still interested in the case because they have the right to export. They're here. More importantly. It's generally interested in the law that commerce makes in this area because it might affect it in some future case. Right. It will in a future period. Every exporter in the ambit would have standing to come in. Not just an exporter of the subject merchandise. Remember, the whole point is this is an interested party, since hardware is, because during the review investigation, it produced, but more importantly, it exported and sold ironing tables to the United States. So there's money that's been deposited, which if you get a changed rate, I take it, somebody gets back. They either get back or they don't have to pay as much. Right. But there is going to be money changing hands if you win this case, put it that way. Yes. And the question is, is that money directly going into your pocket or is to since hardware's pocket, or is it going into somebody else's pocket? And I take what you're saying, it's going into somebody else's pocket. The pockets of the U.S. importers, but the U.S. importers are the customers of since hardware. All right. And also, going back again, they have a registration and the right to export. Okay. We have your argument. Okay. Thanks very much. Thank you. Case is submitted.